

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 8, 2024**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 7** |
|  | § |  |
| **MANUEL VILLARREAL,** | § | **Case No. 23-31257-MVL7** |
|  | § |  |
| **Debtor.** | § |  |
|  | § |  |

|  |  |  |
|---|---|---|
| **ADRIANE COLLEEN KEILS** | § |  |
|  | § |  |
| **Plaintiff,** | § |  |
|  | § |  |
| **v.** | § |  |
|  | § | **Adv. Pro. No. 23-03079-MVL** |
| **MANUEL VILLARREAL** | § |  |
|  | § |  |
| **Defendant.** | § |  |
|  | § |  |

### ORDER DECLARING DOMESTIC SUPPORT OBLIGATIONS NON-DISCHARGEABLE AND DENYING DEBTOR'S DISCHARGE

1

This Court issues this Order containing its findings of fact and conclusions of law with regard to the Complaint filed by Plaintiff Adriane Colleen Keils against Defendant Manuel Villarreal (the "**Defendant**" or the "**Debtor**"). The trial was held on August 16, 2024. At the trial, both Ms. Keils and Mr. Villarreal testified. Upon conclusion of the trial, the matter was taken under advisement.

The Court's findings and conclusions are based upon the record before the Court and are issued under Rule 52 of the Federal Rules of Civil Procedure (the "**Rules**"), made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").[1]

For the reasons that follow, the Court GRANTS the Plaintiff's causes of action under 11 U.S.C. § 727(a)(5), DENIES the Plaintiff's causes of action under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), and 727(a)(4)(A), and GRANTS the Plaintiff's cause of action under 11 U.S.C. § 523(a)(5).

## FINDINGS OF FACT

On June 13, 2022, an Agreed Final Decree of Divorce (the "**Decree of Divorce**") was entered by the 442nd Judicial District of Denton County, Texas (the "**State Court**") in Case No. 21-5669-442 in the *Matter of the Marriage of Adriane Collen Villarreal and Manuel Villarreal and in the Interest of A.R.V., a child of the parties*. Plaintiff's Exh. 4.[2]  In the Decree of Divorce, the State Court imposed an obligation for child support on Manuel Villarreal in the amount of $542.92 per month beginning April 1, 2022, and an obligation for medical and dental support in the amount

---

[1] Any finding of fact that constitutes a conclusion of law shall be adopted as such, and any conclusion of law that that constitutes a finding of fact shall be adopted as such.
[2] All references to the Plaintiff's exhibits shall be with regard to the exhibit list found at ECF No. 19.

of $202.42 per month beginning April 1, 2022. *Id.* at 16, 23, 26. The State Court also awarded, among other items, 53% of the Distributable Sale Proceeds[3] from the sale of the marital home to Mr. Villarreal less $21,000 for Ms. Keils' attorney's fees. *Id.* at 41. The martial home was sold on June 30, 2022. Plaintiff's Exh. 8. Mr. Villarreal testified that he received approximately $47,000 from the sale of the marital home.

On March 15, 2023, the State Court entered an *Order Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages, and Suspending Commitment* ("**Contempt Order**"). Plaintiff's Exh. 7. In the Contempt Order, the State Court Ordered the Defendant to pay the Plaintiff:

(1) Arrearages of child support in the amount of $2,116.00 (*Id.* at 22-23).

(2) Award of attorney's fees as child support in the amount of $8,748.00 (*Id.* at 23).

(3) Proceeds from an insurance check from Allstate in the amount of $226.30. (*Id.* at 21).

(4) Proceeds from a check from the U.S. Treasury for a child tax credit in the amount of $500.00 (*Id.*).

(5) Proceeds from a check from Homeowner's Insurance of America in the amount of $957.50 (*Id.*).

(6) Proceeds from a check from Carrington in the amount of $470.38 (*Id.*).

(7) Reimbursement for water and electric bills owed to Ms. Keils in the amount of $246.75 (*Id.* at 22).

---

[3] All capitalized terms not defined herein shall adhere to the meaning ascribed to such terms in the Contempt Order (as hereinafter defined) and the Decree of Divorce.

On June 15, 2023 (the "**Petition Date**"), Defendant voluntarily filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.[4] Plaintiff's Exh. 3. On the Petition Date, the Debtor also filed his Official Form 106 (the "**Schedules**"). In the Debtor's Schedule A/B, the Debtor claims he held $5.65 in a checking account and $4,869.00 in a savings account at the time of filing. *Id.* at 12. The Debtor claimed on his Schedule E that he owed Ms. Keils $2,100.00 in priority claims for domestic support obligations and $2,676.00[5] in unsecured claims. *Id.* at 25-27. The Debtor also lists a debt of $2,100.00 to Texas Child Support on his Schedule E. *Id.* at 25. The Debtor testified that unsecured claims include the $226.00 debt related to the Allstate Insurance check and the $500.00 debt related to the U.S. Treasury check addressed in the Contempt Order. There is no clear identifiable line item on the Debtor's Schedule E that directly correlates with the award of attorney's fees to Ms. Keils. *See id.* at 25-40.

In his Schedule I, the Debtor claims that he earned $9,542.74 per month through two different jobs as of the Petition Date. *Id.* at 44. He expected his income to decrease because working two full time jobs was "not sustainable for the long-term." *Id.* The Debtor testified that he started working with Questpro on January 30, 2023, and that he finished that job in late May of 2023. The Debtor testified that he began working with MDX Insurance Services in February 2023 and that he was still employed as of the Petition Date. The Debtor testified that he worked two jobs from mid-February 2023 until late-May 2023, but that he only worked for MDX Insurance Services as of the Petition Date. On the Debtor's Form 122A-1, the Debtor's current monthly income for the six months prior to filing was $6,280.28. *Id.* at 69. The Debtor testified that this figure is the average monthly income that he is currently making from MDX Insurance Services.

---

[4] *In re Manuel Villarreal*, Case No. 23-31257-MVL7 (Bankr. N.D. Tex.).
[5] The Debtor's Schedule E/F Part 2 lists three different unsecured claims owed to Ms. Keils: $226 (tate), $500 (edit), and $1,950 (fund).

On the Petition Date, the Debtor also filed his required Schedules and Statement of

Financial Affairs ("**SOFA**"). *Id.* at 52. The Debtor's SOFA indicates that the Debtor made

$33,470.81 from January 1, 2024, until the Petition Date. *Id.* at 53. The Debtor did not list the sale

of his marital home on his SOFA in Part 7. *Id.* at 58. The Debtor also does not list a check that the

Debtor held for his son from a personal injury lawsuit on his SOFA in Part 9. *Id.* at 60. The Debtor's

Schedules, SOFA, and Form 122A-1 have never been amended.

## CONCLUSIONS OF LAW

### Jurisdiction

This Court has jurisdiction over this case and this proceeding under 28 U.S.C. §§ 1334(b),

157(a), and the Northern District of Texas's Order of Reference of Bankruptcy Cases and

Proceedings Nuc Pro Tunc, Misc. Order 33. This matter is a core proceeding under 28 U.S.C. §

157(b)(2)(J).

### Discharge

The Bankruptcy Code requires a discharge be granted to a debtor unless one of the statutory

grounds for denial of discharge is proven. 11 U.S.C. § 727(a); *see Cadle Co. v. Duncan (In re*

*Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009). Denying a debtor's discharge is an extreme remedy.

*Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003) (citing *Rosen*

*v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993)). Only "very specific and serious infractions"

warrant denial of a discharge. *Martin Marietta Materials Sw., Inc., v. Lee (In re Lee)*, 309 B.R.

468, 476 (Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.3d

1169, 1172 (5th Cir. 1991). The exceptions to discharge are construed strictly against the creditor

and liberally in favor of the debtor. *Duncan*, 562 F.3d at 695.

A creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor made false statements. *Id.* (citing Fed. R. Bankr. P. 4005). If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense. *Id.*

The Plaintiff objects to the discharge of the debt owed specifically to the Plaintiff under section 523(a)(5). The Plaintiff also objects to the Debtor's entire discharge under four subsections of § 727(a).

## Section 523(a)(5)

The Plaintiff brings a cause of action under section 523(a)(5) of the Bankruptcy Code alleging that the debts owed to Ms. Keils should not be discharged because they are domestic support obligations as defined in 11 U.S.C. § 101 (14A). Pursuant to 11 U.S.C. § 523(a)(5), "[a] discharge under section 727 … of this title does not discharge an individual debtor from any debt … for a domestic support obligation." At the Hearing, the Debtor stipulated to the nature of the debt owed to Ms. Keils, agreeing that the debts owed to Ms. Keils constitute domestic support obligations. As such, the Court finds that the debt owed to Ms. Keils pursuant to the Decree of Divorce and the Contempt Order related thereto are nondischargeable in all respects pursuant to 11 U.S.C. § 523(a)(5).

## Section 727(a)(2)(A)

The Plaintiff objects to the Debtor's discharge under section 727(a)(2) of the Bankruptcy Code, alleging that the Debtor "disposed of significant funds received by him in divorce with no explanation as to where the funds went[.]" ECF No. 11 at ¶ 9. The Plaintiff's cause of action under section 727(a)(2) focuses solely on the Debtor's pre-petition actions, which means that section

727(a)(2)(A) is the applicable subsection.  Section 727(a)(2)(A) provides that "[t]he court shall grant the debtor a discharge, unless … the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate … transferred, removed, destroyed, or concealed … property of the debtor, within one year before the date of the filing of the petition[.]" 11 U.S.C. § 727(a)(2)(A). "In order to deny discharge, the statute requires that four elements be proven: (1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989). Harm to a creditor is not an element of § 727(a)(2). *See Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

Ms. Keils claims that Mr. Villarreal disposed of significant funds received by him in the divorce, most specifically the $47,000 that Mr. Villarreal received from the sale of their marital home. The home was sold on June 30, 2022, and Mr. Villarreal filed for bankruptcy on June 15, 2023. Therefore, any transfer or concealment of the funds that Mr. Villarreal received from the sale of the marital home belonged to the Debtor and would have been transferred/concealed within a year of the Petition Date, thus satisfying the second and third elements of a section 727(a)(2)(A) action.

The Court then turns to the first element: whether the Debtor transferred or concealed any of the proceeds from the sale of the martial home. A "transfer" is defined in the Code as:

    (a) the creation of a lien;
    (b) the retention of title as a security interest;
    (c) the foreclosure of a debtor's equity of redemption; or
    (d) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property.

11 U.S.C. § 101(54). The Plaintiff claims that the Debtor concealed or transferred the proceeds of the sale of the marital home because the proceeds are not listed on the Debtor's Schedules and

7

there is no accounting of how the money was spent. At the hearing, the Debtor testified that all that

remained from the sale of the home were the $5.65 in his checking account and $4,869.00 in his

savings account that he listed on his Schedule A/B. The Debtor further testified that after his

divorce and receipt of the proceeds from the sale of the home, he lived lavishly and wastefully

spent a lot of the money he had received. The Debtor also testified that he also used part of the

money to pay off minor debts. Here, the Debtor's lavish spending of the proceeds from the sale of

the house is considered a transfer under the Bankruptcy Code. Thus, the first element of section

727(a)(2)(A) is satisfied.

The final element of a section 727(a)(2)(A) action is whether the transfer was made with

the intent to hinder, delay, or defraud. "[E]vidence of actual intent to defraud creditors is required

to support a finding sufficient to deny a discharge. Constructive intent is insufficient." *Chastant*,

873 F.2d at 91. "[A]ctual intent … may be inferred from the actions of the debtor and may be

shown by circumstantial evidence." *Id.*

The Fifth Circuit has identified the following factors to aid courts in processing the

circumstantial evidence of actual intent:

> (1) the lack of inadequacy of consideration; (2) the family,
> friendship, or close associate relationship between the parties; (3)
> the retention of possession, benefit or use of the property in
> question; (4) the financial condition of the party sought to be
> charged both before and after the transaction in question; (5) the
> existence or cumulative effect of the pattern or series of transactions
> or course of conduct after the incurring of debt, onset of financial
> difficulties, or pendency or threat of suits by creditors; and (6) the
> general chronology of the events and transactions under inquiry.

*Id.* All the factors of fraud do not have to be present to support the finding of fraudulent intent;

however, evidence of only one factor may not be dispositive. *Hong Kong Dev. Co. v. Phan (In re*

*Phan)*, 607 B.R. 598, 609 (Bankr. S.D. Tex. 2019). Constructive intent is inadequate; proof of

actual intent—which can be inferred from Debtor's actions and circumstantial evidence—is necessary. *Id.* Courts may deduce fraudulent intent from all of the facts and circumstances of a case. *Id.* If the plaintiff can demonstrate these facts, the burden shifts to the debtor to prove that he lacked fraudulent intent. *Id.*

Here, there is no evidence that the Debtor lacked consideration for his spending, that there was a transfer to a relative, or that the Debtor retained the proceeds that were spent. There is also no evidence that the Debtor purposefully depleted the funds he received from the sale of the home in order to change his financial condition. After a review of all the factors, the Court finds that the Debtor lacked the intent to hinder, delay, or defraud his creditors. As such, the Court finds that there lacks sufficient grounds to deny the Debtor a discharge under section 727(a)(2)(A).

### Section 727(a)(3)

The Plaintiff objects to the Debtor's discharge under section 727(a)(3) of the Bankruptcy Code, alleging that the Debtor failed to preserve documents and records with regard to the Debtor's financial status, particularly with respect to the $47,000 the Debtor received from the sale of the marital home. Under § 727(a)(3), a debtor can be denied discharge when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Therefore under § 727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003).

9

Debtors are not required to maintain a "full detail" of financial records, but the records should be "written evidence" of the debtor's financial condition. *Duncan*, 562 F.3d at 697 (quoting *Dennis*, 330 F.3d at 703). The Seventh Circuit has reasoned that "courts should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *In re Juzwaik*, 89 F.3d 424, 428 (7th Cir. 1996). The financial records a debtor maintains should be appropriate and reasonable for a debtor of similar sophistication. *Hughes v. Wells (In re Wells)*, 426 B.R. 579, 594 (Bankr. N.D. Tex. 2006) (Houser, J.).

As part of the § 727(a)(3) analysis, the Fifth Circuit requires that the plaintiff satisfy an "initial burden of production that the debtor's failure to produce adequate records makes it impossible to discern his financial status—[then] the debtor must prove the inadequacy is 'justified under all the circumstances.'" *Duncan*, 562 F.3d at 697 (quoting *Dennis*, 330 F.3d at 703).

Here, the Plaintiff failed to meet her initial burden of proof. There was no evidence that the Debtor failed to keep appropriate books and records. The Plaintiff never requested the Debtor's financial books and records through discovery. There was also no evidence adduced that the Debtor refused to give the Plaintiff his financial records. Because the Plaintiff fails to meet her initial burden, the Court cannot conclude the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(3).

### Section 727(a)(4)

The Plaintiff objects to the Debtor's discharge under section 727(a)(4)(A) because of the Debtor's repeated errors on his Schedules, SOFA, and Form 122A-1. Under § 727(a)(4)(A), a discharge will not be granted if the debtor knowingly and fraudulently made a false statement in

connection with the case. "To establish a false oath under this section, the creditor must show that '(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'" *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (alterations in original) (quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 179 (5th Cir. 1992)). Additionally, a debtor's omissions can satisfy § 727(a)(4)(A) when such omissions are knowing and fraudulent. *Johns*, 2024 WL 4314832, *10 (citing 6 Collier on Bankruptcy ¶ 727.04 (16th 2024)).

The Plaintiff alleges that the Debtor made false oaths in his Schedules, SOFA, and his Official Form 122A-1, including: (1) not listing all of the debt owed to Ms. Keils on his Schedules, specifically the award of attorney's fees; (2) inaccuracies with regard to the Debtor's income and employment on the Debtor's Schedule I; (3) not listing a check held by the Debtor for the benefit of his son on the Debtor's SOFA; (4) not listing the sale of the marital home as a sale of property within the previous two years on the Debtor's SOFA; and (5) inaccuracies with regard to the Debtor's monthly income for the six months prior to filing on the Debtor's Form 122A-1. The Debtor does not dispute that he made the statements under oath concerning these areas and that the statements are false. However, the Debtor claims that the omission of certain information was accidental and that the inaccuracies are due to misunderstandings in the paperwork and that he did not act with fraudulent intent. The Debtor testified that his bankruptcy counsel was the one that prepared the Schedules, SOFA, and Official Form 112A-1.

With specific regard to materiality, the Fifth Circuit has been clear that the "issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Beaubouef*, 966 F.2d at 178. Rather, the Court must focus on whether the false oath "bears a

relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* Here, the missing and inaccurate information on the Debtor's Schedules, SOFA, and Official Form 112A-1 is material because it deals with the existence and disposition of his property.

As for the requisite intent, under § 727(a)(4), "[c]ircumstantial evidence may be used to prove fraudulent intent, [if] the cumulative effect of false statements, when taken together evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *Duncan*, 562 F.3d at 695. False oaths sufficient to justify the denial of discharge include a false statement or omission in the debtor's schedules or a false statement by the debtor at the examination during the proceedings. *Phan*, 607 B.R. at 610. "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential because the schedules 'serve the important purpose of insuring the adequate information is available for the [t]rustee and creditors without need for investigation to determine whether the information provided is true.'" *Beaubouef*, 966 F.2d at 179 (quoting *In re Urban*, 130 B.R. 340, 344 (Bankr. M.D. Fla. 1991)). As the Honorable Barbara Houser stated in *Crumley*, even if the debtors had no actual intent to defraud, fraudulent intent may be established "through the cumulative effect of a large number of falsehoods in the debtor's schedules as evidence of a reckless disregard for the truth." *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010).

The schedules and statements submitted in a bankruptcy case are signed under oath, and while they are not required to be perfect, the Fifth Circuit has made it clear that debtors are not entitled to a discharge where they make statements under oath with "reckless indifference to the truth." *Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). A showing of reckless indifference to the truth in filling out a debtor's schedules and statements is

equivalent to showing the requisite fraudulent intent to deceive sufficient to bar a discharge under § 727(a)(4)(A). *Beaubouef*, 966 F.2d at 178. A debtor who makes more than one false statement under oath with an opportunity to clear up the inconsistencies has demonstrated recklessness, which is sufficient for the bankruptcy court to infer the requisite intent. *Id.* However, a court should not deny a discharge when items are omitted from schedules by honest mistake. *Id.* A particular pattern of mistakes is far more important than the amount. *Crumley*, 428 B.R. at 367.

This cause of action is a very close call. In this case, the Court observed the Debtor during a live, in-person trial, and heard him testify. The Court found the testimony of the Debtor to be credible. The Court is satisfied that the Debtor possessed no actual intent to defraud, delay or hinder the creditors. The Court also concludes that the Debtor's discharge should not be denied in this instance based on a reckless indifference to the truth. Here, the inaccuracies and false statements in the Debtor's bankruptcy paperwork seem to amount to honest mistakes. Therefore, because the Plaintiff has failed to meet her burden on fraudulent intent, her claims under section 727(a)(4)(A) fail.

## Section 727(a)(5)

Finally, the Plaintiff argues that the Court should deny the Debtor a discharge under section 727(a)(5) because the Debtor failed to account for the funds that he received from the sale of the marital home. Under § 727(a)(5), a discharge may be denied if the debtor fails to explain any loss or deficiency in his assets to meet his liabilities. 11 U.S.C. § 727(a)(5). The plaintiff bears the initial burden of adducing evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable for distribution to creditors. *Tow v. Henley (In re Henley)*, 480 B.R. 708, 766 (Bankr. S.D. Tex. 2012); *Coleman County State Bank v. Boyd (In re Boyd)*, No. 17-40426-ELM, 2024 WL 557927, *27 (Bankr. N.D. Tex. 2024) (Morris, J.); *see*

13

*Matter of Chu*, 679 F. App'x 316, 319-20 (5th Cir. 2017). The mere allegation that the debtor has failed to explain losses is insufficient; instead, the creditor must establish a prima facie case of loss or unusual transactions to shift the burden to the debtor to provide a satisfactory explanation. *Crumley*, 428 B.R. at 371.

What constitutes a "satisfactory" explanation for the reduction of assets has not been definitively defined, but a lack of wisdom in the debtor's expenditures, standing alone, is not grounds for denial of a discharge. *Id.* The proper focus under § 727(a)(5) is on the credibility of the proffered explanation rather than the propriety of the disposition of the assets, and an explanation need not even be meritorious to be satisfactory. *Id.* However, the debtor's explanation must consist of more than a vague, indefinite, and uncorroborated hodgepodge of financial transactions. *Boyd*, 2024 WL 557927, at *27. A debtor cannot overcome a §727(a)(5) objection with mere general explanations; when substantial assets have disappeared from the estate, the debtor must produce supporting documentary evidence. *Henley*, 480 B.R. at 787.

Here again, the Plaintiff relies on the evidence that the Debtor received at least $47,000 from the sale of the marital home within the year preceding the bankruptcy filing. The Plaintiff has proven sufficient evidence of loss, showing that the Debtor represented on his Schedules that he only had $5.65 in a checking account and $4,869.00 in a savings account as of the Petition Date. Plaintiff's Exh. 3 at 12. The Debtor testified that he paid off some of his minor debts using the proceeds from the sale of the home. The Debtor further testified that after his divorce he lived lavishly and spent the money on dinners and doing things with friends. The Debtor characterized his spending as "someone who won the lottery and just went crazy." The Debtor presented no evidence besides his testimony about how he spent the sale proceeds irresponsibly.

14

Whereas the § 727(a)(4) objection was a close call, the § 727(a)(5) objection is much less so based on the standard applied by courts in this Circuit. *See Boyd*, 2024 WL 557927, at *27. The Debtor cannot overcome a § 727(a)(5) objection with mere general explanations. The Debtor has produced no documentary evidence to show how he spent the sale proceeds and only gave vague and general descriptions of his reckless spending. The Debtor has not overcome his burden to provide a satisfactory explanation for the reduction of assets. Therefore, the Court concludes that grounds exist to deny the Debtor's discharge under 11 U.S.C. § 727(a)(5).

## CONCLUSION

Having found there are grounds under § 727(a)(5) to deny the discharge based on the Debtor's lack of satisfactory explanation on the depletion of assets, the Court hereby grants that portion of the Complaint. The Court denies the remaining § 727 counts.

Additionally, as the Debtor stipulated, the Court finds that there are grounds to declare the debts owed to Ms. Keils with regard to the Decree of Divorce and the Contempt Order to be nondischargeable domestic support obligations pursuant to 11 U.S.C. § 523(a)(5).

The Court directs counsel for the Plaintiff to prepare a form of judgment in conformance with this Order.

### END OF ORDER ###